729 So.2d 769 (1999)
Gloria D. THIBODEAUX, Theresa Knoblock and Allen P. Thibodeaux, Individually and on Behalf of the Minor Child, Amanda Thibodeaux
v.
WAL-MART STORES, INC., ABC Insurance Company and Dean Legg.
No. 98 CA 0556.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*770 F. Hugh Larose, Thibodaux, Counsel for PlaintiffsAppelleesGloria D. Thibodeaux, et al.
Frederick R. Campbell, Geoffrey J. Orr, Metairie, Counsel for DefendantsAppellants Wal-Mart Stores, Inc., et al.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Defendant, Wal-Mart Stores, Inc. (Wal-Mart), appealed the trial court's grant of a Judgment Notwithstanding the Verdict on the issue of damages. For the amounts contested on appeal, the jury awarded plaintiff, Gloria D. Thibodeaux, a total of $12,000 for mental and physical pain and suffering, and $18,125 in medical expenses. The trial court granted the plaintiff's motion for JNOV, increased the award for pain and suffering to $150,000, and awarded the full amount of medical expenses claimed, $36,250. We affirm.
LSA-C.C.P. Art. 1811(F) provides: "The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues." A JNOV is a procedurally correct device for raising an unreasonable damage award. When a trial court determines a JNOV is warranted because reasonable persons could not differ that the award was abusively low, it must determine the proper amount of damages. In making this determination, the trial court is not bound by the constraints imposed on appellate courts by Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976), of raising the award *771 to the lowest point reasonably within the discretion afforded that court. Instead, it should render a de novo award based on its independent assessment of damages. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 833-34 (La. 1991); Verret v. Carline, 93-0508, p. 3 (La.App. 1st Cir. 3/11/94), 634 So.2d 37, 39, writ denied, 94-0842 (La. 5/13/94), 637 So.2d 1070.
On review of the JNOV award of higher quantum, the appellate court uses the same criteria as the trial court:
could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was ... abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court[,] which is reviewed on appeal under the constraints of Coco ....
Anderson, 583 So.2d at 834.
After a thorough review of the record, we conclude, that reasonable men in the exercise of impartial judgment could not differ as to the fact that the jury award was abusively low. The plaintiff's self-serving deposition testimony, particularly her lack of full disclosure of her medical history in her deposition, may have created a mistrust of the plaintiff's claims in the minds of the jury. However, the undisputed objective medical evidence cannot be called into question by the inaccuracies in plaintiff's deposition testimony. The jury's possible mistrust of the plaintiff may have led the jury to wrongfully discount much of the overwhelming medical evidence; evidence that proved, more probably than not, that the disc herniation (1) was not a pre-existing condition, (2) was related to the accident at Wal-Mart, and (3) triggered an injury that resulted in large medical bills, and eventually, surgery. No evidence was presented that the degenerative changes alone would have required surgical intervention in 1996, or in the relatively near future.
Wal-Mart introduced Mrs. Thibodeaux's medical records from 1991 and 1994. The records reported complaints of neck pain, among other symptoms, and noted degenerative changes in the spine; but provided no evidence of disc herniation. The doctors in 1991 diagnosed stress headaches. The 1994 medical records contained a notation that further studies or an MRI should be done, if herniation was suspected. No such studies or test were done. The final diagnosis for the symptoms reported in 1994 was chronic fatigue. The record contains no evidence of any further problem for the nine month period between the 1994 treatment, and the accident on September 15, 1995.
On the day of the accident, Mrs. Thibodeaux was hit in the neck by a falling bicycle and bicycle rack, made up of a landscaping timber and chains. The bicycle and rack were part of a display suspended from the ceiling. From the medical record, it is clear that Mrs. Thibodeaux reported neck pain consistently after the accident. However, the more significant neck pain, and further evidence of disc herniation, manifested itself over a period of months. Mrs. Thibodeaux's urologist, Dr. Frank Graffagnino, first suspected a serious cervical injury, such as disc herniation, based on Mrs. Thibodeaux's report of slow urine flow. She had experienced bladder leakage and infections before the accident, but not the slow urination problem. The record fully supports this medical history. The doctor related the reported leakage to childbirth, but was alarmed by the slow urination. The doctor documented and measured the slow urination by objective testing. He related the slow urination problem to the accident.
Mrs. Thibodeaux's neurosurgeon, Dr. Henry Carson McKowen, confirmed Dr. Graffagnino's suspicions of a cervical injury. In 1996, Dr. McKowen performed a three-level fusion on the cervical spine. He related the disc herniation he observed during surgery to the Wal-Mart accident. He testified to that causal relationship during the trial, even after he examined the 1991 and 1994 medical records. Dr. McKowen testified, as follows: "I operated on her because she had symptomatic spinal chord compression. Part of that was due to degenerative changes and part of it is due to a disc herniation. But I think what tipped her over the edge was the disc herniation." Mrs. Thibodeaux's severe cervical *772 pain and slow urination improved after surgery. Dr. McKowen testified that the surgery was quite risky and painful, including pain from a bone graft necessary to the surgical procedure.
Ms. Thibodeaux's claim is not defeated because her medical problems were caused by a combination of the degenerative condition and the herniation. It is hornbook law that a tortfeasor takes a plaintiff as he is found. The tortfeasor is responsible for the injuries he caused, and any aggravation caused by the tortfeasor to a pre-existing condition. Price v. Exxon Corporation, 95-0392, p. 14 (La.App. 1st Cir 11/9/95), 664 So.2d 1273, 1282.
Having concluded that the trial court correctly granted the JNOV, we must review the damage award under the abuse of discretion standard. Anderson, 583 So.2d at 834. The judge set the damage award for pain and suffering at $150,000, and awarded all of the medical expenses, most of which related to the surgery. After a review of the evidence in this case, we conclude that the increased awards in this particular case were not an abuse of discretion.
For these reasons, we affirm the judgment of the trial court. The costs of the appeal are assessed to Wal-Mart.
AFFIRMED.